# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS
Filed: February 24, 2026

```
* * * * * * * * * * * * * *    *
AVIA MCDANIEL,                 *
                               *
            Petitioner,        *        No. 22-1743V
                               *
v.                             *        Special Master Young
                               *
SECRETARY OF HEALTH            *
AND HUMAN SERVICES,            *
                               *
            Respondent.        *
* * * * * * * * * * * * * *    *
```

*Leigh Finfer*, Muller Brazil, LLP, Dresher, PA, for Petitioner.
*Sara DeStefano*, U.S. Department of Justice, Washington, DC, for Respondent.

## FACT RULING[1]

On November 28, 2022, Avia McDaniel ("Petitioner") filed a petition for compensation in the National Vaccine Injury Compensation Program ("the Program")[2] alleging that the influenza ("flu") vaccine Petitioner received on September 23, 2020, caused her to suffer from transverse myelitis ("TM") and sequelae. Pet. at 1–5. ECF No. 1.

On September 9, 2024, Petitioner moved for a fact ruling on the record requesting a "finding that the preponderance of evidence in this case demonstrates that Petitioner received an intramuscular [flu] vaccine on September 23, 2020." Pet'r's Mot. at 1, ECF No. 33. After carefully analyzing and weighing all of the evidence presented in this case in accordance with the applicable

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755 ("the Vaccine Act" or "Act"). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

legal standards,[3] I find that the record contains preponderant evidence that Petitioner received the flu vaccine on September 23, 2020.

## I.    Procedural History

Petitioner filed her petition and medical records on November 28, 2022. Pet.; Pet'r's Exs. 1–26. On October 12, 2023, Respondent filed his Rule 4(c) report arguing against compensation and noting ambiguity surrounding the date of vaccination. Resp't's Rep., ECF No. 15. Specifically, Respondent noted that Petitioner's CVS Vaccine Record indicated that the vaccine was "filled" on September 23, 2020, and "administered" on September 24, 2020. *Id.* at 2. Respondent also noted inconsistencies with date of onset of symptoms. *See id.* Since Petitioner must provide preponderant evidence that her alleged injury was caused-by, and therefore occurred following, her vaccination to be successful, I ordered her to file any billing statement(s), insurance documentation, or any other evidence related to the alleged September flu vaccine date. ECF No. 16.

After numerous motions for extension of time and motions for subpoenas, without the filing of the requested documents, I issued an order indicating that in light of the outstanding questions surrounding vaccination and onset, a fact ruling was appropriate in this matter. ECF No. 26. I ordered Petitioner to file any additional evidence or arguments regarding Petitioner's onset, including an affidavit by Petitioner and/or any billing statement(s) or insurance documentation within thirty days. *Id.*

On May 31, 2024, Petitioner filed documents responsive to some of the subpoenas, including insurance billing documents from BlueCross BlueShield. Pet'r's Exs. 27–29, ECF No. 27. On July 1, 2024, Petitioner filed a status report indicating an update regarding outstanding CVS records. ECF No. 29. On July 2, 2024, Petitioner filed the records from CVS. Pet'r's Ex. 31, ECF No. 30. On July 16, 2024, Respondent filed a status report indicating he reviewed the latest filing and maintaining that Petitioner has not established entitlement to compensation. ECF No. 31. On September 9, 2024, Petitioner filed messaging from CVS, updated therapy records, and a supplemental declaration from Petitioner. Pet'r's Exs. 30, 32–33, ECF No. 32.

Petitioner filed a motion for a fact ruling on the record on September 9, 2024. Pet'r's Mot. Respondent filed a response on September 30, 2024. Resp't's Response, ECF No. 35. Petitioner did not file a reply. This matter is now ripe for consideration.

## II.    Factual Background

### A.  Medical Records

---

[3] While I have reviewed all of the information filed in this case, only those filings and records that are most relevant to the decision will be discussed. *Moriarty v. Sec'y of Health & Hum. Servs.*, 844 F.3d 1322, 1328 (Fed. Cir. 2016) ("We generally presume that a special master considered the relevant record evidence even though he does not explicitly reference such evidence in his decision.") (citation omitted); *see also Paterek v. Sec'y of Health & Hum. Servs.*, 527 F. App'x 875, 884 (Fed. Cir. 2013) ("Finding certain information not relevant does not lead to—and likely undermines—the conclusion that it was not considered.").

Although Petitioner's medical records include a comprehensive account of her medical history including a pre-vaccination history potentially relevant to the nature, development, and progression of her diagnosis, the current motion by Petitioner is limited to an evaluation of the evidence regarding the date of vaccination. Therefore, the recounting of the facts, including the medical records, witness statements, and any other filings will be limited to those directly related to the matter currently at issue.

Petitioner's pre-vaccination medical history indicated that from 2018 to August 24, 2020, she was under the care of neurosurgeon Donald Hilton, M.D., at Neurosurgical Associates of San Antonio, P.A. for recurrent disc herniation. Pet'r's Ex. 3 at 16, 46. She "continued to have significant pain and ha[d] failed a conservative course." *Id.* at 38. Pursuant to Dr. Hilton's recommendation, surgical intervention was planned. *Id.* Petitioner was scheduled for L5-S1 minimally invasive tubular retractor surgery on October 5, 2020. *Id.* at 10.

On September 24, 2020, Petitioner called Dr. Hilton's office to report waking up with numbness, tingling, and "a static like feeling" to her groin and down both legs. Pet'r's Ex. 3 at 6. A record recounting that visit noted that she received flu vaccines on September 1, 2018, and October 1, 2019. *Id.* at 8. A record from a second telehealth visit that day with physician's assistant ("PA") Laura Webb documented Petitioner's reports that she was "in her usual state of heath until a few nights ago when she developed new [bilateral lower extremity] pain." *Id.* at 10, 14. Petitioner also reported new and "significant" groin pain as well as moderate numbness. *Id.* Petitioner was "concerned" with her new symptoms given her upcoming surgery. *Id.* The plan was for Petitioner to obtain a new MRI and follow up afterwards. *Id.* at 11.

Two days later, on September 26, 2020, Petitioner went to the emergency department ("ED") at Northeast Methodist Hospital for numbness and tingling that began two days prior. Pet'r's Ex. 2 at 299. An ED note listed her immunization status as "general unknown." *Id.* at 300. Petitioner was diagnosed with paresthesias and discharged home. *Id.* at 298. The following day, September 27, 2020, Petitioner presented to another ED at Methodist Stone Oak Hospital. *Id.* at 277. She reported shooting pain down both of her legs for the past five days. *Id.* at 279. Treating physicians suspected sciatica, prescribed Petitioner 600 mg ibuprofen, and she was instructed to follow up with her primary care physician. *Id.* at 283.

Five days later, on October 2, 2020, Petitioner returned to Methodist Stone Oak ED for "bilateral lower extremity tingling" that went up to her lower abdomen. Pet'r's Ex. 2 at 104. Petitioner reported that Dr. Hilton canceled her previously scheduled surgery and recommended Petitioner undergo a nerve conduct study. *Id.* The review of systems was positive for pain in her back, neck, and extremity, as well as for tingling in her lower extremities. *Id.* at 105. Differential diagnoses included Guillain-Barré syndrome ("GBS"), TM, or multiple sclerosis ("MS"), and Petitioner was admitted. *Id.* On October 6, 2020, treating physicians documented that Petitioner's symptoms started one week after her flu vaccine. *Id.* at 91. She remained hospitalized through October 13, 2020, with a discharge diagnosis of "clinically isolated syndrome vs MS." *Id.* at 91.

Petitioner was admitted to Warm Spring Hospital on October 13, 2020. Pet'r's Ex. 6 at 50. Intake forms indicated that Petitioner required medical supervision for medical and functional deficits including "recent urinary urgency, generalized weakness, impaired gait . . . and decreased

strength and balance." *Id.* at 54. Petitioner's history of present illness noted that she "knew [she] was fine [on September] 22 when [she] went to bed. [She] woke up the 23rd and was numb from groin down to both feet. Thought maybe [she] slept bad. Went to work." *Id.* On October 27, 2020, Petitioner was discharged from inpatient rehabilitation. *Id.* at 64.

Petitioner followed up with her primary care provider ("PCP") on October 30, 2020. Pet'r's Ex. 2 at 6. She reported her recent hospitalization and "possible MS." *Id.* Petitioner reported receiving her flu vaccine "1-2 weeks prior to symptoms onset." *Id.* at 8. On November 11, 2020, Petitioner saw neurologist Suzanne Gazda, M.D., for an evaluation of "possible new onset MS." Pet'r's Ex. 8 at 7. Her listed history of present illness stated "[a]pparently on September 22, 2020, [Petitioner] got a routine flu vaccination and the next morning she woke up with numbness and tingling from the groin torso down." *Id.* Dr. Gazda diagnosed Petitioner with TM and believed it was "very possible this is a vaccine related injury with the time occurrence." *Id.* at 8. Dr. Gazda's plan included filing a report for vaccine injury. *Id.*

On March 8, 2021, Petitioner saw neurologist Rebecca Romero, M.D., for a new patient evaluation of a "demyelinating disorder." Pet'r's Ex. 11 at 111. Petitioner reported she received a flu vaccine on September 23, 2020, and the following morning she awoke with numbness in her thighs, legs, and perineal area. *Id.* She reported the burning and tingling in her feet began on September 25, 2020, and the numbness moved up her body to her abdomen, breasts, and back. *Id.* Dr. Romero reviewed Petitioner's prior medical records and imaging. *Id.* at 111–14. Dr. Romero wrote Petitioner "received the flu vaccine the day before her symptoms started. Though it cannot be proven that the flu vaccine was the cause of her TM it is certainly suspicious given the timing of vaccine and myelitis." *Id.* at 114.

On July 14, 2021, Petitioner had a telehealth appointment with PA Walsh. Pet'r's Ex. 24 at 691. Recent MRI imagining showed no new lesions. *Id.* At a neuropsychological evaluation on September 3, 2021, Petitioner reported numbness in her legs and thighs "following a flu vaccine" in September 2020. *Id.* at 602. On November 8, 2021, PA Walsh wrote Petitioner a letter for a medical exemption for the COVID-19 vaccine, citing "relapsing [TM] that was caused by flu shot." *Id.* at 22. On February 24, 2022, one year and five months post vaccination, Petitioner had an appointment at the Neurology Center of San Antonio, P.A. Pet'r's Ex. 18 at 12. This was her third neurology consultation for an "opinion for [TM] and to rule out MS." *Id.* She "remained confused on her actual diagnosis." *Id.* Petitioner reported "receiving a flu vaccine [and] the next day having leg weakness, numbness and tingling." *Id.*

In addition to medical records, Petitioner filed documents she received from her pharmacy, CVS. Her Statement of Prescription History lists a prescription for a flu vaccine with a fill date of September 23, 2020. Pet'r's Ex. 31 at 3. Petitioner also filed a document generated by CVS Pharmacy that records Petitioner's receipt of the Flucelvax quad intramuscular vaccine in her left deltoid and identifies the date administered as September 24, 2020. Pet'r's Ex. 1 at 8.

## B. Petitioner's Affidavit

In addition to her initial declaration stating the basis for her injury compensation claim and identifying the relevant vaccination and alleged injury, Petitioner filed a supplemental declaration

on September 9, 2024, to clarify the date of her vaccination. Pet'r's Ex. 32. Petitioner stated that she received her flu vaccine on September 23, 2020, but that she did not remember the time of vaccination. *Id.* at ¶ 3. She provided an estimated time range of 4–6 pm. *Id.* Petitioner stated that she was working from home and logged off her computer, went to pick up her daughter from school, and travelled to CVS pharmacy to get her flu vaccine. *Id.* The following morning, Petitioner recounted awakening "with pain, numbness, and tingling radiating from [her] groin down to both lower extremities." *Id.* at ¶ 5. She noted that she called her surgeon to report her new symptoms and described them as "completely different from what [she] had previously been experiencing related to the lumbar issues that affected both sides of [her] body." *Id.* Petitioner asserted that she would not have driven herself to CVS pharmacy on September 24, 2020 for a vaccination, because she "would not have felt comfortable driving in that state." *Id.*

## III.    Legal Standards

To receive compensation under the Vaccine Act, a petitioner must demonstrate either that: (1) the petitioner suffered a "Table injury" by receiving a covered vaccine and subsequently developing a listed injury within the time frame prescribed by the Vaccine Injury Table set forth at 42 U.S.C. § 300aa-14, as modified by 42 C.F.R. § 100.3; or (2) the petitioner suffered an "off-Table injury," one not listed on the Table, as a result of his receiving a covered vaccine. *See* 42 U.S.C. §§ 300aa-11(c)(1)(C); *Moberly v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1321 (Fed. Cir. 2010); *Capizzano v. Sec'y of Health & Hum. Servs.*, 440 F.3d 1317, 1319–20 (Fed. Cir. 2006).

Special masters, as finders of fact, "are entitled—indeed, expected—to make determinations as to the reliability of the evidence presented to them and, if appropriate, as to the credibility of the persons presenting that evidence." *Moberly*, 592 F.3d at 1326. The process for making determinations in Vaccine Program cases regarding factual issues begins with consideration of the medical records. § 11(c)(2). The special master is required to consider "all [] relevant medical and scientific evidence contained in the record," including "any diagnosis, conclusion, medical judgment, or autopsy or coroner's report which is contained in the record regarding the nature, causation, and aggravation of the petitioner's illness, disability, injury, condition, or death," as well as "the results of any diagnostic or evaluative test which are contained in the record and the summaries and conclusions." § 13(b)(1)(A). The special master is then required to weigh the evidence presented, including contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993). Pursuant to Vaccine Act § 13(a)(1)(A), a petitioner must prove her claim by a preponderance of the evidence. A special master must consider the record as a whole but is not bound by any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of the petitioner's injury or illness that is contained in a medical record. § 13(b)(1).

In Program cases, contemporaneous medical records and the opinions of treating physicians are favored. *Capizzano*, 440 F.3d at 1326 (citing *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1280 (Fed. Cir. 2005)). This is because "treating physicians are likely to be in the best position to determine whether 'a logical sequence of cause and effect show[s] that the vaccination was the reason for the injury.'" *Id.* In addition, "[m]edical records, in general, warrant consideration as trustworthy evidence." *Cucuras v. Sec'y of Health & Hum. Servs.*, 933 F.2d 1525,

1528 (Fed. Cir. 1993). Indeed, contemporaneous medical records are ordinarily to be given significant weight due to the fact that "the records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Id.* Contemporaneous medical records are also generally found to be afforded greater weight than contradictory oral testimony. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 396 (1947) ("[i]t has generally been held that oral testimony which is in conflict with contemporaneous documents is entitled to little evidentiary weight.").

However, there is no "presumption that medical records are accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (finding that a special master must consider the context of a medical encounter before concluding that it constitutes evidence regarding the absence of a condition.). While a special master must consider these opinions and records, they are not "binding on the special master or court." § 13(b)(1). Rather, when "evaluating the weight to be afforded to any such . . . [evidence], the special master . . . shall consider the entire record." *Id.*

In determining the accuracy and completeness of medical records, special masters will consider various explanations for inconsistencies between contemporaneously created medical records and later given testimony. The Court of Federal Claims has identified four such explanations for explaining inconsistencies: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203 (2013), *aff'd*, 746 F.3d 1334 (Fed. Cir. 2014).

## IV.   Discussion

Petitioner alleged that she received a flu vaccine on September 23, 2020, that caused her to suffer from TM. She further alleged that her symptoms developed approximately 12 hours post vaccination. Respondent asserted that after considering all of the relevant filed evidence, "the exact date of vaccination remains unclear," and there are indeed conflicting accounts of Petitioner's vaccination date provided by her pharmacy. Resp't's Response at 2. In one accounting, CVS Pharmacy lists Petitioner's vaccine fill date as September 23, 2020, while a separate CVS-generated record lists the administration date as September 24, 2020. CVS does not define these terms, and Petitioner's medical records include self-reported accounts that could place her vaccination date as early as September 22, 2020.

The medical records do however, provide some details of Petitioner's actions September 24 through September 26, 2020. On September 24, 2020, Petitioner called her neurologist's office and reported numbness, tingling, and a static-like feeling that she awoke to. In a follow-up call the same day, Petitioner stated that she developed bilateral lower extremity pain "a few nights ago," and since then had also "developed new, moderate numbness/paresthesias." Pet'r's Ex. 3 at 10. This note was signed and dated by PA Webb on September 24, 2020 at 4:52pm. *Id.* at 14. These symptoms ultimately led her to the ED two days later September 26, 2020. In her supplemental

declaration, Petitioner attested that she would not have gone to the pharmacy on September 24 for a vaccination while suffering from these symptoms.

It is reasonable and credible that although Petitioner reported suffering from lower extremity pain in the days leading up to September 24, 2020, her pain had not progressed enough to cause her to delay the scheduling and administration of her flu vaccine on September 23, 2024. This is further supported by her medical history illustrating her commitment to regularly scheduling and receiving flu vaccinations every fall. I find her asserted chronology more likely than Respondent's contention that she endeavored to be vaccinated, while simultaneously seeking care for rapidly worsening symptoms that threatened her mobility. Petitioner did not note when she had a received her vaccine (the day before or mere hours) before her call to her neurologist to report new symptoms; therefore, nothing can be gleaned from this omission. However, in her later recounts of this series of events, Petitioner never described any symptoms she experienced at the time of her vaccine, nor did she report that was suffering from numbness, weakness, or paresthesia.

## V.    Conclusion

After careful review of the record, I find that the record contains preponderant evidence that while Petitioner was suffering from bilateral leg pain pre vaccination that continued to worsen and evolve to include her later symptoms of numbness and paresthesias, she was still willing and able to receive her flu vaccination on the afternoon of September 23, 2020. The record further provides preponderant evidence that the following morning, her symptoms had continued to worsen to the point where she contacted her neurologist but did not note her vaccination. In addition to providing preponderant evidence of a September 23, 2020 vaccination date, the record provides preponderant evidence of pre vaccination symptoms consistent with Petitioner's alleged condition that were steadily worsening in the days leading up to her September 24, 2020 call to her neurologist. Petitioner has fourteen (14) days from the filing of this Ruling to file a status report indicating how she wishes to proceed in light of the findings contained within this Ruling.

**IT IS SO ORDERED.**

s/Herbrina D. S. Young
Herbrina D. S. Young
Special Master